**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GEORGES SULA,**

                                        **Plaintiff,**            **1:06-CV-316**
                                                                  **(NAM/DRH)**
        **v.**

**CITY OF WATERVLIET, CITY OF**
**WATERVLIET BUILDING DEPARTMENT,**
**CITY OF WATERVLIET POLICE DEPARTMENT,**
**MAYOR D. CARLSON, individually and in his**
**capacity as Mayor, PAUL MURPHY, individually and**
**in his capacity as General Manager and Commissioner**
**of Public Safety, STEVEN HOFFMAN, individually**
**and in his capacity as Building Inspector, MARK**
**GILCHRIST, individually and in his capacity as**
**Building Inspector,**

                                        **Defendants.**
_____

APPEARANCES:                                    OF COUNSEL:

JOHN W. BAILEY & ASSOCIATES, P.C..              Karen E. McGrory, Esq.
_Counsel for Plaintiff_
Pine West Plaza 2, Suite 202
Washington Avenue Extension
Albany, New York 12205

RICE & AMON                                     Terry Rice, Esq.
_Counsel for Defendants_
Four Executive Boulevard, Suite 100
Suffern, New York 10901

**NORMAN A. MORDUE, Chief U.S. District Judge:**

                    **MEMORANDUM-DECISION AND ORDER**

**I.        INTRODUCTION**

        This action arises from demolition of a single family residential dwelling in the City of

Watervliet, New York, in March 2005.  Defendants have moved to dismiss plaintiff's complaint

for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

1

## II.        FACTUAL AND PROCEDURAL BACKGROUND

The Court notes that its recitation of the relevant "facts" concerning the present motion are premised on allegations in the complaint, statements in attorneys' affidavits, statements in factual affidavits submitted by witnesses and information gleaned from unsworn, uncertified exhibits to the parties' moving papers. The Court relies on the parties' factual submissions only for the purpose of setting forth the context in which it has analyzed the present request for relief. The propriety of submitting such material in support of or opposition to a motion under Rule 12(b)(6) of the Fed. R. Civ. P. will be addressed below. The demolished building was located at 1412 First Avenue and was a two-story brick structure in duplex with 1410 First Avenue. At some time, the building was damaged by fire and the interior was gutted. The building was unoccupied and in a state of obvious disrepair when plaintiff purchased it on October 28, 2004. At that time, plaintiff paid back property taxes owed by the previous owner and intended to "rehab" the building. Within days of plaintiff's purchase of the building, City inspectors entered the home to conduct an engineering review after someone allegedly complained that bricks were falling off of the facade of the building. On November 9, 2004, the City notified plaintiff that failure to address and remedy the various safety issues and structural deficiencies noted by its building inspector and consulting engineer within 30 days would result in condemnation of the building.

Thereafter, plaintiff retained an engineer to assess the structural integrity of the building and propose necessary repairs. Based upon the determination by plaintiff's engineer that the building was structurally sound and could reasonably and safely be repaired, plaintiff requested that the 30-day time period for completing repairs be extended.

On November 24, 2004, the City wrote to plaintiff advising him that his request for an

extension of the repair time frame was denied, that the building was condemned, and that the City would be moving forward with demolition.  The record is not entirely clear concerning all of the events which followed.  What is evident is that plaintiff appeared in court a number of times with and without an attorney in an effort to comply with orders to barricade the building and obtain plans and blueprints demonstrating his intent to repair the building.  Plaintiff also applied for and obtained a barricade permit.  In early March 2005, the building was demolished.  The City contends plaintiff was notified of the planned demolition as evidenced by three letters sent to him on November 9, 2004, January 11, 2005, and February 8, 2005.[1]  Although plaintiff acknowledges receiving the first notice concerning the requirement that he make repairs within 30 days, he denies ever receiving the latter two letters.  Since he was appearing in court and making every effort to comply with requirements to repair the building, plaintiff claims he was shocked by the demolition and had absolutely no idea it was going to occur.

Plaintiff alleges in his complaint that defendants violated his constitutional rights in various ways by demolishing his property.  He also alleges that he was targeted or treated differently by defendants on account of his race or national origin in violation of the constitution. To wit, plaintiff, who is an African immigrant, asserts that an offensive racial epithet - "niggers not allowed" - was spray painted on his building.  Plaintiff contends that when he reported the incident to police, they did nothing to investigate this alleged "hate crime" against him.

---

[1] The Court notes that apparently the City's engineering consultant advised the City on November 30, 2004, that plaintiff's engineering report "generally complie[d] with our request that a licensed design professional evaluate the structure, assess its safety and outline the measures necessary to mitigate deficiencies."  Based thereupon, the consultant recommended that the City negotiate with plaintiff to construct a timetable for preparation of a rehabilitation plan and establish milestones for completion of remediation.  In December 2004, the City requested that another engineering firm prepare an assessment of the structural condition of the plaintiff's building and provide an estimate of required repairs.  The results of this assessment are not attached to any party's moving papers.

Defendants have moved to dismiss the complaint for failure to state any legally viable cause of action.  Plaintiff opposes this motion

## III.    DISCUSSION

A.    Standard of Review

The standard applicable to motions to dismiss is well-settled.  On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations of the complaint as true, and draw all reasonable inferences in favor of the nonmoving party.  *See Grandon v. Merrill Lynch & Co.,* 147 F.3d  184, 188 (2d Cir. 1998); *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir. 1995).  Therefore, the issue before the Court on such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson,* 189 F.3d 284, 287 (2d Cir. 1999) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995)).

B.    Deprivation of Constitutional Rights

Plaintiff bases his constitutional claims on 42 U.S.C. § 1983, which reads in part:

> Every person who, under color of any statute, ordinance, regulation,
> custom or usage of any State ..., subjects or causes to be subjected,
> any citizen of the United States ... to the deprivation of any rights,
> privileges or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action.

Plaintiff asserts various claims under 42 U.S.C. § 1983.  He claims that his rights under the Fourth, Fifth and Fourteenth Amendments were violated by defendants "under color" of state law upon which defendants relied in demolishing his property.  Specifically, plaintiff alleges that the demolition of his building constituted an unreasonable seizure of his property by defendants within the meaning of the Fourth Amendment.  Plaintiff also asserts he was denied substantive and procedural due process under the Fifth and Fourteenth Amendments when the City of

Watervliet demolished his building without providing him with notice or an opportunity to object.  Finally, plaintiff asserts that his equal protection rights under the Fourteenth Amendment were violated when defendants targeted him based on his race and/or national origin and failed to investigate or prosecute a "hate crime" committed against him based on his African heritage.

Defendants argue primarily herein that plaintiff was afforded ample notice of the City's intent to demolish his property and based thereupon, he has no viable denial of procedural due process claim.  Defendants also contend that defendants actions herein were "reasonable," did not "shock the conscience" and are therefore not actionable in a substantive due process or unlawful seizure claim.  Defendants complain that plaintiff has made only "conclusory" allegations against them in the complaint and that there is an absence of evidence to support plaintiff's claims.  Insofar as plaintiff's equal protection claim, defendants state that it is not adequately pled since plaintiff has not provided details concerning how he was treated differently than others similarly situated.  The individual defendants contend that they are not liable to plaintiff as a matter of law on the basis of qualified immunity.  The City of Watervliet contends that plaintiff's claim against it is not adequately pled since the complaint fails to allege a municipal custom or policy led to the alleged constitutional violations herein.  Finally, defendants contend that plaintiff cannot assert a state law claim for intentional infliction of emotional distress against a municipality.

As referenced above, a motion to dismiss under Rule 12(b)(6) addresses the adequacy of a party's pleading, not the merits of a claim or the existence of evidence which either proves or disproves a particular cause of action.  Analysis of the evidence gathered in support of a legal cause of action is reserved for summary judgment which generally occurs after parties have conducted thorough discovery in a case.  Here, defendants have inexplicably elected to forego

discovery and have instead attempted to inform the Court, via their attorney and unsworn, unauthenticated documents, of the relevant facts in this case.  Rather than oppose defendants' motion on this basis, plaintiff's counsel has compounded the error by responding in kind with her own recitation of the "facts," submission of opposing affidavits and documentary "evidence" in support of plaintiff's claims.

Since the Court has not opted to convert defendants' motion to dismiss to an application for summary judgment pursuant to Fed. R. Civ. P. 12(c), none of the factual or evidentiary submissions by the parties is relevant to the present legal inquiry.  *See Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (in adjudicating Rule 12(b)(6) motion, district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.").  A plaintiff, suing under § 1983, while obligated to make "a short and plain statement" of the essential elements of his claim in his complaint, Fed. R. Civ. P. 8(a), is not required to set out the facts in detail.  The complaint will survive dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Escalera v. New York City Housing Auth.*, 425 F.2d 853, 857 (2d Cir.), *cert. denied,* 400 U.S. 853 (1970).  Thus, the question at this pleading stage is not whether plaintiff has presented evidence in support of his claims, but whether he has stated legally viable claims to afford him the opportunity to discover and present evidence in support of his complaint.

Plaintiff asserts in the complaint that although he was in the process of remediating structural deficiencies in his building, defendants demolished the property without providing adequate notice or process.  Plaintiff also asserts that he was targeted and/or treated differently

by defendants because of his race or national origin.  These allegations are sufficient to state a claim for deprivation of constitutional rights against all defendants under the Fourth, Fifth and Fourteenth Amendments.  Thus, the Court finds that plaintiff has adequately pled a claim for violation of his equal protection rights and unreasonable search and/or seizure without procedural due process of law.

The Court finds, however, that plaintiff's substantive due process claim against defendants must be dismissed, but not for the reasons proffered by defendants.  The substantive component of due process bars arbitrary action by the government against individuals, but only conduct that "shocks the conscience" or violates the "decencies of civilized conduct."  *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952)).  Defendants contend that plaintiff's substantive due process claims must be dismissed because defendants' alleged actions or inactions herein do not "shock the conscience."  As referenced above, in the absence of a factual record, the Court cannot determine the relative arbitrariness of defendants' alleged conduct in this case.  However, in *Albright v. Oliver*, 510 U.S. 266, 273 (1994), the Supreme Court held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."  In this case, there is an "explicit textual source of constitutional protection" on which plaintiff may and does rely---namely, the Fourth Amendment.  Simply put, the Fourth Amendment protects against "unreasonable searches and seizures" by the government. U.S. CONST. AMEND. IV.   A "seizure ··· occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' " *Soldal v. Cook County, Illinois*, 506 U.S. 56,

60 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  Although plaintiff

does allege that defendants acted arbitrarily and oppressively in condemning and authorizing the

demolition of his building, *see Crowley v. Courville*, 76 F.3d 47, 51 (2d Cir. 1996), his claim fits

squarely within the contours of the Fourth Amendment's protections.  *See Soldal*, 506 U.S. at

61-62, *DeBari v. Town of Middleton* 9 F. Supp.2d 156, 161 (N.D.N.Y. 1998).  Where, as here,

the government demolishes a building, a "seizure" clearly results within the explicit meaning of

the Fourth Amendment.  *See id.*  Accordingly, because plaintiffs' claim is grounded in an explicit

textual source, his substantive due process claim must be dismissed.

     Defendants argue that they acted reasonably in condemning and demolishing plaintiff's

building and that they provided plaintiff with all of the notice and process he was due.  They

contend that in any event, they are entitled to qualified immunity since their actions were taken

with the safety, health and welfare of plaintiff and all other City of Watervliet residents in mind.

Under any constitutional test, the legality of defendants' conduct in this case turns on its

reasonableness.  *See, e.g., Soldal*, 506 U.S. at 61-62 (whether the Fourth Amendment is violated

depends on whether the seizure was "reasonable"); *Catanzaro v. Weiden*, 140 F.3d 91, 1998 WL

122393, at *2 (2d Cir. March 17, 1998) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981) ("It

has long been recognized, however, that authorized agents may proceed without providing

pre-deprivation hearings when an emergency situation necessitates quick action or makes it

impracticable to provide a meaningful hearing . . . "))  Since there is no factual record to

establish the conduct of any defendant in this case, however, the Court cannot determine whether

qualified immunity shields the individual defendants from liability.  *See Stewart v. Lattanzi*, 832

F.2d 12, 13 (2d Cir. 1987) (district court must conduct "[s]ome factual inquiry" to determine if

qualified immunity attaches).

8

Insofar as plaintiff's claims against the City of Watervliet are concerned, under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978), the City is liable only if one of its policies or customs inflicted or aggravated plaintiff's claimed injuries. For a valid claim of municipal liability under § 1983 the municipality itself must be the wrongdoer rather than one of its employees because § 1983 liability cannot be based on a respondeat superior theory. *See id.* at 691-92. A legally cognizable claim of municipal liability under § 1983 must be based on an official municipal policy or custom under which a constitutional violation was committed. *Id.* at 689-91. With respect to demolition of his property, plaintiff does not state specifically that a policy or custom of the City of Watervliet caused or contributed to plaintiff's alleged loss. However, he does allege that the defendant Mayor, Public Safety Commissioner and Building Inspectors "apprised" [sic] him of his constitutional rights by, *inter alia*, "tolerating" the City of Watervliet's clearly unconstitutional act of demolishing his property without providing adequate notice. "*Monell* established that alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself." *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 125 (2d Cir. 2004). Based thereupon, the Court finds that plaintiff has adequately stated a claim of municipal liability under 42 U.S.C. § 1983 for the alleged unlawful demolition of plaintiff's property.

The fifth cause of action in the complaint also alleges the existence of an official policy or custom which led to or aggravated plaintiff's injuries, by alleging that the City of Watervliet failed to provide proper training or protocol to police officers in investigating alleged "hate crimes." *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (claim for failure to train will

9

trigger municipal liability where "the failure to train amounts to deliberate indifference to the rights" of those with whom the state actors will come into contact).  Thus, the Court finds that plaintiff has adequately alleged that the City of Watervliet deprived him of his constitutional rights by way of the manner in which it investigated or failed to investigate his criminal complaint

**IV.      CONCLUSION**

Based on the foregoing, it is hereby

ORDERED that defendant's motion to dismiss plaintiff's substantive due process claim is GRANTED; and it is further

ORDERED that the balance of defendants' motion to dismiss plaintiff's complaint is DENIED.

IT IS SO ORDERED.

Dated: October 19, 2006
       Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge